IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JULIA ALEXANDER, et al., | ) CASE NO. 1:17 CV 504 |
| Plaintiffs, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| HONEYWELL INTERNATIONAL, INC., et al, | ) |
| Defendants. | ) MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Defendant Honeywell International Inc.'s Motions *in limine* to Preclude Plaintiff's Experts Dr. Murray Finkelstein and Dr. Carols Bedrossian, and to dismiss Plaintiff's claims, or, in the alternative, its request for evidentiary hearing. (ECF #80, 81). Plaintiffs filed Oppositions to the Defendant's motions,[1] and Defendant filed Replies in support of their position. (ECF #111, 112, 123, 124). The issue has been fully briefed and is ripe for consideration.

---

[1] Plaintiff's Motion to Strike Defendant Honeywell's Motion in Limine (ECF #110) is DENIED, but the Alternative Request for leave to file a response in excess of twenty pages is GRANTED.

## STANDARD

Plaintiffs bear the burden on proving the admissibility of their expert's testimony. In determining whether this threshold has been met, courts have been instructed to determine whether the testimony has a "reliable basis in the knowledge and expertise of the [the relevant] discipline." *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*, 509 U.S. 579, 592 (1993). In doing so, the court looks at whether the proposed expert testimony is derived by the scientific method and is based on scientific knowledge. It does not determine whether an expert's conclusions are correct, but rather whether they are derived from a scientifically valid process. *Id*; *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*, 43 F.3d 1311, 1315 (9th Cir. 1995). Expert testimony must generally assist the trier of fact in understanding the evidence or in determining a fact in issue.

Daubert asks trial courts to consider five factors when determining the admissibility of expert testimony: (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the relevant scientific community. *Daubert I*, 509 U.S. 592-94. After considering these factors, courts are granted a "broad attitude" to determine admissibility. *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). Admissibility does not require a perfect methodology. *Best v. Lowes Home Centers, Inc.*, 563 F.3d 171, 181(6th Cir. 2009). Rejection of testimony under Daubert "is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008). The traditional means of attacking questionable evidence, such as the use of cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof, are also the appropriate means for addressing the validity of an expert's scientific conclusions. See Id.

## ANALYSIS

### A. Dr. Bedrossian[2]

Dr. Bedrossian is a medical doctor with board-certifications in anatomical and clinical pathology, and in the sub-specialty of cytopathology. He has taught and lectured domestically and abroad on asbestos and asbestos-related disease to medical students, scientists, and physicians.[3] He has authored over 200 publications in peer-reviewed literature, with approximately fifty of those relating to asbestos and asbestos-related diseases. He has authored and co-authored books addressing asbestos-related diseases, pulmonary pathology, and pathology of soft-tissue tumors. He has personally diagnosed hundreds of patients with mesothelioma, including peritoneal mesothelioma, and with asbestos-related colon cancer.

Dr. Bedrossian applied a weight of the evidence methodology to derive his conclusion that Ms. Alexander's exposure to asbestos from Bendix brakes was a substantial factor in causing her mesothelioma and colon cancer. Courts have held that the weight-of-the-evidence

---

[2] The following summary is based on Plaintiff's submitted evidence concerning Dr. Bedrossian's qualifications and methodology, and the relevant case law.

[3] Defendant suggests that Dr. Bedrossian's expertise in asbestos and asbestos-related disease is not useful here because he has no experience with or expertise in brake dust. This argument misses the mark. It is not "brake dust" in general that is being blamed as the causative agent in this case, but the asbestos particles contained in the Bendix brake dust from the relevant period. Asbestos, not dust, is the agent being blamed, and Dr. Bedrossian has undisputed expertise in the area of asbestos and asbestos-related diseases.

-3-

methodology, which considers a mix of all available exposure history, biological plausibility, and scientific evidence, is sufficiently reliable under *Daubert*. *See generally, e.g., Waite v. All Acquisition Corp.*, 194 F.Supp.3d 1298, 1313 (S.D. Fla. 2016); *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1046 (Pa. 2016). In doing so he relied on published studies and scientific literature which utilized the scientific method in their testing. It is not required that he perform the tests himself, so long as he is relying on knowledge that can be or has been tested. The methodology he employed has been accepted by the relevant scientific community as evidence by it use by the International Agency for Research on Cancer, the World Health Organization, and the United States Agency for Toxic Substances and Disease Registry. *See, Waite*, at 1313.

Further, the Eighth District Ohio Court of Appeals has specifically held that Dr. Bedrossian's weight-of-the-evidence methodology is admissible under Daubert because it is based on "his personal knowledge, his education, training, and experience, his review of [the plaintiff's] medical records, occupational history, and the available pathology materials, and his review of the medical literature concerning asbestos and asbestos-related cancers." *Walker v. Ford Motor Co.*, 2014 WL 4748482 (Ct. App. Ohio Sept. 25, 2014), appeal not allowed 142 Ohio St.3d 1449 (2015). As a federal court applying Ohio law, we are bound to consider the holdings of the Ohio courts, and the Eighth District has approved Dr. Bedrossian's methodology in a substantially similar case.

Defendant's claim that the Eighth District's opinion has been overridden by the Ohio Supreme Court's decision in *Schwartz v. Honeywell Int'l, Inc.*, No. 2016-1372, 2018 WL 793606 (Oh. Jan. 24, 2018). The *Schwartz* court, however, did not opine on admissibility under the *Daubert* standard. Rather it held that Dr. Bedrossian could not opine on a "cumulative

exposure" theory of causation when he did not individually analyze or compare the plaintiff's exposure from a range of different products when formulating his conclusion. In that case, he had opined that the combined exposure from multiple products caused the harm, and each above-background exposure that contributed to the total exposure was, therefore, a substantial cause of the plaintiff's injury. The Ohio Supreme Court did not accept that the plaintiff could hold every defendant liable under an aggregate causation theory. This problem does not arise in the instant action. In this case, the plaintiff alleges exposure to only one product. *Schwartz* does prohibit or otherwise address the admissibility of testimony based on a cumulative exposure to the same product over an extended period of time. Therefore, the aggregate or "cumulative exposure" theory that was invalidated by the Ohio Supreme Court is not at issue here, and *Schwartz* in no way undermines the *Walker* finding that Dr. Bedrossian's methodology passes the *Daubert* test.

Plaintiffs have fulfilled their burden of showing that Dr. Bedrossian's methodology is sufficiently reliable and based upon valid scientific methodology and accepted principles. The questions raised by the Defendant do not undermine the admissibility of his testimony, but are better suited to addressing the credibility of his conclusions and the information that he relied on. Defendant's Motion in Limine to Preclude Plaintiff's Expert Dr. Carlos Bedrossian and Dismiss Plaintiffs' Claims (ECF #81) is, therefore, DENIED.

## B. Dr. Murray Finkelstein[4]

Dr. Finkelstein is a physician-epidemiologist with over thirty years experience. He has

---

[4] The following summary is based on Plaintiff's submitted evidence concerning Dr. Finkelstein's qualifications and methodology, and the relevant case law.

published 134 peer-reviewed articles in peer-reviewed journals, the majority of which related to asbestos and asbestos-related diseases. He has prepared background health-effects documentation for proposed asbestos regulation for the Ontario Ministry of Labour. He has also undertaken an epidemiologic study of the health of workers at an asbestos-cement plant in Scarborough, Ontario. He has published multiple peer-reviewed papers on the relationship between asbestos exposure and health. He has also worked for the United States EPA Science Advisory Board Asbestos Panel, and participated on the revision of the Helsinki Criteria for the diagnosis and attribution of asbestos, asbestosis, and cancer.

As did Dr. Bedrossian, Dr. Finkelstein utilized the weight-of-the-evidence standard in formulating his opinion in this case. As set forth in more detail above, this standard has been accepted by courts as satisfying the *Daubert* standard of reliability. Dr. Finkelstein's methodology also has been subject to a Daubert hearing in another jurisdiction and has been upheld as valid and admissible. *See Northrup Grumman Sys. Corp. v. Britt*, 241 So.3d 208 (Fla. 3d DCA 2017). He describes his methodology as "taking into consideration medical and scientific literature published in the twentieth and twenty-first centuries," including "reports of epidemiologic studies including cohort, case-control and case reports." He specifically considered the fiber burden evidence as it informs the relationship between friction products and disease. He compared affected individuals with control subjects, a methodology used to validate scientific findings. He considered animal studies and statistical methodology for analyzing asbestos concentrations in human tissues. He considered length, frequency, and environmental context when applying the research to Ms. Alexander's circumstances. He used a formula based on the literature, research, and a "linear dose model." His methodology is based on peer

reviewed information, generally accepted scientific knowledge, information that is capable of and has been subject to repeated testing, and the use of a formula with a known potential rate of error. As such, Plaintiffs have fulfilled their burden of showing that Dr. Finkelstein's methodology is sufficiently reliable and based upon valid scientific methodology and accepted principles. As above, the questions raised by the Defendant do not undermine the admissibility of Dr. Finkelstein's testimony, but are better suited to addressing the credibility of his conclusions and the information that he relied on. Defendant's Motion in Limine to Preclude Plaintiff's Expert Dr. Murray Finkelstein and Dismiss Plaintiffs' Claims (ECF #80) is, therefore, DENIED.

## CONCLUSION

For the foregoing reasons, the Motion to Strike Defendant Honeywell's Motion in Limine is DENIED, but the Alternative Request for leave to file a response in excess of twenty pages is GRANTED. (ECF #110). Defendant's Motions to preclude expert testimony are both DENIED at this time. (ECF #80, 81). The Court reserves the right to re-visit the Defendant's arguments and objections, if appropriate, based on the evidence presented at trial. IT IS SO ORDERED.

DATED: September 5, 2018

DONALD C. NUGENT
United States District Judge